# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

US DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2023 JUN -8 PM 3: 12

DEPUTY CLERK ___

|  |  |  |
|---|---|---|
| CONGHUA YAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. [4-23CV-288-P] |
| | ) | |
| MARK H TAYLOR, in his official capacity | ) | |
| as Criminal District Office Investigator, | ) | |
| TARRANT COUNTY, | ) | |
| and in his private capacity, | ) | |
| Defendant, | ) | |
| and | ) | |
| RICHARD B HARWELL, in his official capacity | ) | |
| as Sergeant, TARRANT COUNTY, | ) | |
| and in his private capacity, | ) | |
| Co-Defendant. | ) | |
| and | ) | |
| DAVID F BENNETT, in his official capacity | ) | |
| as Sheriff, Deputy, TARRANT COUNTY, | ) | |
| and in his private capacity, | ) | |
| Co-Defendant. | ) | |

## FIRST AMENDED COMPLAINT
## FOR FACIAL CONSTITUTIONAL CHALLENGE
## AND DECLARATORY RELIEF
## AND INJUNCTIVE RELIEF
## AND DAMAGE CLAIM
## AND JURY DEMAND

### I. INTRODUCTION

COMES NOW, the Plaintiff, Conghua Yan, and respectfully moves this Honorable Court first amended complaint for a facial constitutional challenge to the "requirement set forth by TCDA's office" at issue, pursuant to violations of Article One, First, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and 18 U.S.C. § 3771. Furthermore, the Plaintiff brings a

complaint for an as-applied constitutional challenge to defendants' actions at issue, pursuant to violations of the Fourteenth Amendment, 42 USC § 1983, and 18 U.S.C. § 3771.

The Plaintiff requests that this Honorable Court consider and grant this first amended complaint for Facial and As-Applied Constitutional Challenge, and Declaratory Relief, and Injunctive Relief, and Damage Claim, etc.

The Plaintiff requests jury trial.

In support of this complaint, the Plaintiff states as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Article One, First, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and 18 U.S.C. § 3771.

2. This Court is authorized to award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and by its general legal and equitable powers.

3. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b), as the Plaintiff resided in Tarrant County, Texas for over 10 years prior to filing this lawsuit. The defendant and co-defendants named in this lawsuit are officials of governmental state agencies acting in their administrative or investigative capacities in Tarrant County, which falls within the jurisdiction of the Northern District of Texas. Therefore, the Northern District of Texas is the proper venue for this action.

## III. PARTIES

4. Plaintiff Conghua Yan is a natural person and a resident of Tarrant County for more than 10 years. Plaintiff is a professional information technology expert for the banking industry. Plaintiff has dedicated his whole career to the banking industry for almost 30 years. Plaintiff earned high ranking reputation in his career. Plaintiff has no criminal history.

5.      Defendant Mark H Taylor is an assistant criminal district attorney/investigator for the Tarrant County Criminal District Attorney's Office. He is responsible for investigating felonies occurring in Tarrant County. He is being sued in his official investigatory capacity, official administrative capacity, and private capacity.

6.      Defendant Richard B Harwell is a sergeant for Tarrant County Sheriff's department. He is responsible for supervising the Criminal Investigations Division which investigates criminal complaints occurring in Tarrant County. He is being sued in his official investigatory capacity, official administrative capacity, and private capacity.

7.      Defendant David F Bennett is a deputy sheriff for Tarrant County Sheriff's department, the Criminal Investigations Division. He is responsible for investigating criminal complaints occurring in Tarrant County. He is being sued in his official investigatory capacity, official administrative capacity, and private capacity.

## IV. STATUTORY FRAMEWORK

### A. TEXAS CODE OF CRIMINAL PROCEDURE

8.      Art. 2.04. SHALL DRAW COMPLAINTS. Upon complaint being made before a district or county attorney that an offense has been committed in his district or county, he shall reduce the complaint to writing and cause the same to be signed and sworn to by the complainant, and it shall be duly attested by said attorney.

9.      Art. 2.05. WHEN COMPLAINT IS MADE. If the offense be a misdemeanor, the attorney shall forthwith prepare an information based upon such complaint and file the same in the court having jurisdiction; provided, that in counties having no county attorney, misdemeanor cases may be tried upon complaint alone, without an information, provided, however, in counties having one or more criminal district courts an information must be filed in each misdemeanor case. If the offense be a felony, he shall forthwith file the complaint with a magistrate of the county.

### B. ADMINISTRATIVE LAW Handbook 2022
### Texas Attorney General Office

10.     The Administrative Procedure Act provides general legal requirements that agencies must adhere to when adopting rules or conducting contested cases (Tex. Gov't Code §§ 2001.001–.902.).

## C. ADMINISTRATIVE PROCEDURE
### Texas Government Code §§ 2001.

11.     Under Texas Government Code §§ 2001.003.6.(A)(ii) "Rule" means a state agency statement of general applicability that implements, interprets, or prescribes law or policy; or describes the procedure or practice requirements of a state agency.

## V. FACTUAL BACKGROUND OF CRIMINAL COMPLAINS

12.     On December 16,2022, The Plaintiff filed a criminal complaint report, case number 2022-18012. The complaint alleged following criminal conducts:

A.     In March 2022, suspect 1 commingled legal fees from a separate criminal defense case into a family court case by submitting an affidavit claiming that all of these legal fees were incurred in the family case. She requested to be awarded fees in the family court in accordance with the Texas Family Code. When suspect 1 sworn in a false statement that fees from a separate criminal defense case was her fees in the family court case, followed with the submission of her affidavit, the suspect 1 had constituted a first count of aggravated perjury, an offense under the Texas Penal Code Section 37.03.

B.     Suspect 1 filed a "motion for interim attorney's fees, costs, and expenses", pursuant to Tex. Fam. Code § 6.708, which allows the court only to award "In a suit for dissolution of a marriage". Despite the fact that the fees from a separate criminal defense case were billed for services provided by a lawyer with a different license than suspect 1, suspect 1 was still able to conceal the truthful fact using her affidavit, obtained an award for criminal subject matter fees from an associate judge associated with the family court. On April 13, 2002, an associate judge in the family court held a hearing for the "motion for interim attorney's fees, costs, and expenses." According to the court report written by the associate judge, the Plaintiff was ordered to pay attorney fees using his 401K. The associate judge's report is considered a proposed order pursuant to Tex. Fam. Code § 201.011.

C.     On April 26th, 2022, suspect 1 (a licensed lawyer) committed second count of aggravated perjury when she drafted and fabricated a court order of garnishment on April 26th,2022, using a cause of different subject matter "Motion for Spousal Support", signed by suspect 2 (a licensed lawyer) and suspect 3, submitted to the court (offense of TX Penal Code 37.03). In the fraudulent court order that the suspect 1 drafted. she wrote, "On April 13, 2022, the Court heard Respondent's request for Spousal Support inter alia. … Participant, Conghua Yan, was ordered/required to pay spousal support…".

D.     On May 26th, 2022, suspect 1 committed third count of aggravated perjury when she drafted and fabricated a revised court order of garnishment on May 26th,2022, using a cause of different subject matter "Motion for Spousal Support", signed by suspect 2 and suspect 3, submitted to the court (offense of TX Penal Code 37.03).  Suspect 1 repeated the same false statement as her draft on April 26th, 2022.

E.     On June 21st, 2022, suspect 1 committed a fourth count of aggravated perjury by drafting and fabricating a court WRIT of garnishment, using a cause of different subject matter "Motion for Spousal Support". The document was falsely signed by suspect 2 and suspect 3 and submitted to the court, constituting a new offense under the Texas Penal Code Section 37.03. Suspect 1 used this fraudulent court WRIT of garnishment to seize the Plaintiff's employment retirement fund solely for the purpose of her legal fees.

F.     In July 2022, the suspect 2 and Plaintiff signed an objection letter to the employment retirement fund, located in the State of Minnesota, informed the employment retirement fund administrator that the WRIT of garnishment and the court orders of garnishment were not truthful, stated that Plaintiff objected dispensing of the fund, due to the fact that the Plaintiff was not ordered to pay spousal support during the hearing held on April 13, 2002.

G.     The plain truth is evident that the Plaintiff did not have a hearing held on April 13, 2002, regarding spousal support. Therefore, according to the Fourteenth Amendment, states are prohibited from depriving any person of life, liberty, or property without due process of law. However, the Plaintiff believes that suspect 1 made a phone call and sent an email to the employment retirement fund administrator, located in the State of

Minnesota, deceiving them into believing that the court order of garnishment drafted by suspect 1 superseded the April 13th Associated Judge's report. Suspect 1 fraudulently created a definition of "superseded" that cannot be found in the Tex. Fam. Code.

H.     After knowing that suspect 2 and Plaintiff objected dispensing of the fund to the WRIT of garnishment, on August 5th, 2022, suspect 1 sent an email to suspect 2 privately, committing an act of criminal solicitation, an offense under TX Penal Code 15.03. This email also represented an attempted criminal conspiracy, an offense under TX Penal Code 15.01. In it, suspect 1, a licensed lawyer, solicited suspect 2, another licensed lawyer, to refrain from objecting to a fraudulent court order, stating, "In order for us to obtain our attorney's fee, we must say…".

I.     On August 8th, 2022, suspect 2 sent an email to Plaintiff, said, "In that case, we either have to lie and accept the QDRO…", "I am not going to put myself in a position where I am taking money in a non-truthful way…"

J.     After receiving several follow-up emails from suspect 1 soliciting their actions, suspect 2 accepted the solicitation, withdrew the objection without Plaintiff's knowledge, and thereby tacitly approved the dispensing of the fund on his own. Meanwhile, suspect 2 concealed his approval decision from the Plaintiff.

K.     Afterward, the Plaintiff obtained multiple emails providing evidence that suspect 1 and suspect 2 had admitted that the court orders they drafted and signed were not truthful. They also conspired and consented to each other's crimes without the Plaintiff's knowledge. These emails are attached hereto as Exhibit 1.

L.     The outcome of the fraudulent court orders was, the Plaintiff lost $25,000 dollars from his interstate employment retirement fund, located in the State of Minnesota. The Plaintiff also lost his access to employment retirement fund, located in the State of Minnesota, from August 2022 until present.

M.     In addition to committing state crimes, both suspect 1 and suspect 2 in Texas also committed federal offenses. They used interstate mails, emails, and phone calls to defraud an employment retirement fund located in the state of Minnesota to dispense the

fund under conspiracy, thereby violating federal laws specified in 18 U.S. Code § 1341, 18 U.S. Code § 1343, 18 U.S.C. § 664 and 18 U.S.C. § 1027.

N.      In the first quarter of 2023, upon reviewing the evidence, suspect 1, attorney Leslie Starr Barrows, State Bar No. 24048343, was alleged by The Board of Disciplinary Appeals – a statewide independent adjudicatory body of 12 attorneys appointed by the Supreme Court of Texas to hear certain attorney discipline cases – to have potentially violated Tex. R. Disc. Prof'l. Cond. The decision letter is attached herein as Exhibit 2. This decision made by 3 attorneys from BODA further substantiates that the Plaintiff's criminal complaint is not frivolous. BODA grants allegation on average total 80 cases per calendar year statewide.

O.      In the first quarter of 2023, upon reviewing the evidence, suspect 2, attorney William Albert 'Bert' Pigg, Bar No. 24057009, was alleged by The Board of Disciplinary Appeals – a statewide independent adjudicatory body of 12 attorneys appointed by the Supreme Court of Texas to hear certain attorney discipline cases – to have potentially violated Tex. R. Disc. Prof'l. Cond. The decision letter is attached herein as Exhibit 3. This decision made by 3 attorneys from BODA further substantiates that the Plaintiff's criminal complaint is not frivolous. BODA grants allegation on average total 80 cases per calendar year statewide.

P.      However, the crimes that suspect 1 and suspect 2 committed are not the subject matter of this case. The subject matter of this case is the "requirement set forth by the TCDA's office" and its following adjudication acted by defendant and co-defendants.

## VI. COMMON FACTS RELATED TO THE CLAIMS

13.      On December 16, 2022, the Plaintiff filed a criminal complaint, case number 2022-18012, with the Tarrant County Sheriff's Department. On January 4, 2023, David F Bennett, a deputy sheriff with the Tarrant County Sheriff's Department, co-defendant, responded with a signed letter stating that the criminal complaint had been closed. The letter is attached hereto as Exhibit 4.

14.      On January 4th, 2023, the criminal complaint was closed by Tarrant County Sheriff's Department, because it did not meet the "requirement set forth by TCDA's office". It is upon

Plaintiff's belief that Mark H Taylor, the investigator of Tarrant County Criminal District Attorney's Office, defendant, by setting forth a requirement, "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.", constituted this rulemaking action.

15.     According to the letter, David F Bennett, co-defendant, stated that the Tarrant County Criminal District Attorney's Office had set a requirement that they would "only accept or open an investigation into your claim of perjury only at the request of the presiding judge". Since this specific requirement was not met, the Plaintiff's criminal complaint was closed. The two instances of the word "only" in the letter also indicated that Tarrant County Sheriff's Department would close every criminal complaint related to the court if the complaint is made solely by the victims.

16.     In the Plaintiff's specific case, the criminal complaint alleges multiple felony offenses, including but not limited to: Texas Penal Code 15.01 (Criminal Attempt), Texas Penal Code 15.02 (Criminal Conspiracy), Texas Penal Code 15.03 (Criminal Solicitation), Texas Penal Code 37.13 (Record of a Fraudulent Court), Texas Penal Code 37.10 (Tampering with Governmental Record), and Texas Penal Code 37.03 (Aggravated Perjury). However, the Tarrant County Criminal District Attorney's Office, through the Tarrant County Sheriff's Department, has informed the Plaintiff that if the alleged felony crime is court-related, the complaint must exclusively proceed under the presiding judge's request. This request is a prerequisite for the executive branch of government in Tarrant County to initiate its investigatory role. The Plaintiff, who suffered a financial loss of $25,000 and has been unable to freely access his employee retirement fund. Additionally, the Plaintiff has been barred from filling criminal complaint by himself. It is upon Plaintiff's belief that Mark H Taylor, an investigator of Tarrant County Criminal District Attorney's Office is the rulemaker of this "requirement set forth by TCDA's office" when he is under his administrative capacity.

17.     On January 10th, 2023, the Plaintiff submitted an affidavit to the Tarrant County Sheriff's Department, explaining that according to § 76.15 Ex Parte communications, the presiding judge is not allowed to separately communicate with the Plaintiff on any legal or factual issue, and therefore, the Plaintiff cannot communicate with the presiding judge. David F Bennett, a co-defendant, along with his supervisor Richard B Harwell, another co-defendant, met the Plaintiff face-to-face on the 7th floor of the Sheriff's office. In their official capacities, both officers informed the Plaintiff that for the Tarrant County Sheriff's Department and the Tarrant County Criminal District Attorney's Office to

initiate an investigation into the criminal complaints, the Plaintiff would need to hire a lawyer, file a motion with the court, have a hearing, and obtain an order from the presiding judge. They would only act on the criminal complaints if these requirements were met.

18.     On January 16, 2023, the Plaintiff requested a meeting with David F Bennett to discuss the criminal complaint report that David F Bennett had written. However, David F Bennett declined the meeting and sent his supervisor, Richard B Harwell in his stead. During the conversation between the Plaintiff and Richard B Harwell, the Plaintiff requested to file a new criminal complaint, accusing the felony of making false statements to the CID during the criminal investigatory stage of this case, separate from the prior court proceedings. Richard B Harwell refused to open a new criminal complaint. However, Richard B Harwell responded by asserting, 'At this point, we don't have any further business with you at this office.'

19.     Since January 16, 2023, the Tarrant County Sheriff's Department has refused to accept several criminal complaints submitted by the Plaintiff and has also declined to consider any new evidence provided to them. The CID made an administrative decision to deny the Plaintiff's further request to open a criminal complaint, without even attempting to examine the Plaintiff's evidence. As Richard B Harwell stated earlier, 'We don't have any further business with you at this office.'.

20.     On February 21, 2023, at 11:18 a.m., the Plaintiff called the Tarrant County Sheriff's Department 911 service to request that a new criminal complaint report be opened regarding a different criminal matter that did not occur during the prior court proceeding. At 11:31 a.m., the Tarrant County Sheriff's Department called back and refused to take the criminal complaint from the Plaintiff. This agency's action further indicates that the Tarrant County Sheriff's Department has placed the Plaintiff on a "no service" list due to possible discrimination.

21.     Additionally, it is upon the Plaintiff's belief, one of the co-defendants in the CID tipped off the criminal suspect 1 about the Plaintiff's whereabouts, actions, and communications with the Sheriff's Department. This individual also expressed that his concern was about suspect 1's safety.

22.     The Plaintiff's further criminal justice process is compromised due to the fact that CID employee had leaked his information to suspect 1.

23.     The Plaintiff has incurred financial costs and expenses to file this federal suit challenging the facially unconstitutional custom, "the requirement set forth by the TCDA's office." These costs and expenses include, but are not limited to, filing fees, postage fees, processing fees, and summons fees, in an amount of no less than $1000.

24.     Since January 2023, the Plaintiff has expended money, time, and effort studying federal civil procedure and learning to represent himself (pro se) in filing this federal suit to challenge the facially unconstitutional custom, 'requirement set forth by the TCDA's office.' This monetary and non-monetary expenditure could have been used for other beneficial life activities. This damage is in an amount of no less no less than $50,000.

25.     The unlawful acts by the defendant and co-defendants have caused the Plaintiff many sleepless nights and significant emotional distress. The Plaintiff also experienced Endocrine and Metabolic Disorders due to emotional distress.

26.     The Plaintiff is also experiencing emotional distress and pressure due to the fact that, as a non-English speaker without a legal degree, himself has had to overcome significant barriers in order to bring this challenge to the unconstitutional custom of "the requirement set forth by the TCDA's office" before this Federal court on behalf of the people of Texas. The Plaintiff is the only individual with standing and evidence of this longstanding and widespread policy. The mental pressure also caused the Plaintiff many sleepless nights and significant emotional distress with its aftereffects Endocrine and Metabolic Disorders.

27.     The Plaintiff is also experiencing fear of retaliation due to the 'tipping off' action taken by one of the co-defendants. The fear also caused the Plaintiff many sleepless nights and significant emotional distress with its aftereffects Endocrine and Metabolic Disorders.

## VII. STATEMENT OF CLAIM

### A. First Claim for Relief
### Clause "unless ... a grand jury" of 5th Amendment
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

28.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

29.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

30.     As the Supreme Court has noted, "Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such "supervisory" judicial authority exists" United States v. Williams, 504 U.S. 36, 47 (1992);

31.     "The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised."; "In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people"; "Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office"; "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury `can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.' "; "however, we have insisted that the grand jury remain "free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it."; "Recognizing this tradition of independence, we have said that the Fifth Amendment's "constitutional guarantee presupposes an investigative body `acting independently of either prosecuting attorney or judge `. . .." United States v. Williams, 504 U.S. 36, 48-49 (1992);

32.     "In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." See Stirone v. United States, 361 U.S. 212, 218 (1960); "notwithstanding periodic criticism, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reckless or unfounded charges.... Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the

considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." United States v. Mandujano, 425 U.S. 564, 571(1976); "The institution of the grand jury is deeply rooted in Anglo-American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action. In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by "a presentment or indictment of a Grand Jury. "" United States v. Calandra, 414 U.S. 338, 342-43(1974).

33.     This requirement violates the 5th Amendment's clause that states, "No person shall be held to answer for a capital, or otherwise infamous crime, <u>unless</u> on a presentment or indictment of a grand jury." (Emphasis added)

34.     This requirement's two "only" elements, "only accept or open" and "only at the request of the presiding judge," effectively grant the presiding judge in the civil courts exclusive power to decide on criminal subject matters that occur in the court. If this requirement is met, the grand jury will only be allowed to listen to the facts of cases that the presiding judge approved.

35.     This requirement undermines the grand jury's function, as our Constitution gives the grand jury exclusive power to listen to the facts of each case and determine if probable cause exists. This requirement inserts the judicial branch ahead of the grand jury's power to indict or not indict.

36.     This requirement practically alters the 5th Amendment to read, "A person shall be held to answer for a ... crime, <u>ONLY</u> on a presentment or indictment of the <u>presiding judge</u>." (Emphasis added)

37.     For the foregoing reasons, the Court should declare that the clause "unless ... a grand jury" of Fifth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

38.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

39.     Such relief is warranted under the clause "unless … a grand jury" of Fifth Amendment of the United States Constitution.

### B. Second Claim for Relief
### Clause "witness against himself" of 5th Amendment
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

40.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

41.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

42.     This requirement violates the 5th Amendment clause that states "nor shall be compelled in any criminal case to be a witness against himself."

43.     If this requirement is met, every party needs to be present in civil court for the hearing to determine criminal subject matters. Every party is required to be sworn in before the hearing starts. Everyone is presumed to be a witness before knowing if they are suspects, and prior to the civil court hearing, the Miranda rule is never informed to all parties if their statements are to be used against them in court. It is very likely that the person who is called to testify might be turned out to be a criminal suspect after the facts of the case are determined by the presiding judge.

44.     This requirement serves as a hidden way of stripping a suspect's constitutional right to "nor shall be compelled in any criminal case to be a witness against himself."

45.     For the foregoing reasons, the Court should declare that the clause " witness against himself" of Fifth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

46.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

47.     Such relief is warranted under the clause "witness against himself" of Fifth Amendment of the United States Constitution.

### C. Third Claim for Relief
### Clause " to have... assistance of counsel...defense." of 6th Amendment
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

48.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

49.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

50.     "assistance of counsel was found to be a requisite under the Sixth Amendment, as incorporated into the Fourteenth, even for a misdemeanor offense punishable by imprisonment for less than six months." Lassiter v. Department of Social Svcs., 452 U.S. 18, 36 (1981)

51.     "the Court further concluded that "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. " Lassiter v. Department of Social Svcs., 452 U.S. 18, 36 (1981)

52.     This requirement violates the Sixth Amendment clause of "to have the assistance of counsel for his defense." All civil court activities, motions, and hearings require payment of an attorney to represent each party. Unlike in criminal court, where those under poverty can obtain free assistance of counsel for their defense, this is not the case in civil court.

53.     This requirement's two "only" elements, "only accept or open" and "only at the request of the presiding judge," mandates a criminal subject matter hearing to be held in civil court and effectively denies the constitutional right of "to have the assistance of counsel for his defense." for those under poverty.

54.     For the foregoing reasons, the Court should declare that the clause "to have the assistance of counsel for his defense." of Sixth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

55.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

56.     Such relief is warranted under the clause "to have the assistance of counsel for his defense." of Sixth Amendment of the United States Constitution.

### D. Fourth Claim for Relief
### Clause "due process" of 14th Amendment
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

57.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

58.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

59.     This requirement violates the 14th Amendment for the clause of "due process".

60.     "Tumey v. Ohio , 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (holding that the Due Process Clause requires recusal when a judge has a "direct, personal, substantial pecuniary interest" in a case)." Monster Energy Co. v. City Beverages, LLC, 940 F.3d 1130, 1137 (9th Cir. 2019)

61.     Using my criminal complaint case as example, the president judge had multiple financial transactions with the criminal suspect 1. Criminal suspect 1 is a long-time political contributor of the presiding judge. The presiding judge had also rewarded criminal suspect 1 large amount of legal fees during the prior court proceedings. The criminal evidence itself is multiple fraudulent court orders

signed by 3 parties, 2 attorneys and the presiding judge. When one suspect was alleged in the beginning of a criminal investigation, the result might end up that all 3 parties are criminals after the criminal investigation.

62.     This requirement assumes that the presiding judge cannot be a criminal suspect from the beginning and seems to grant the judge immunity from criminal charges. As a result, this requirement gives the presiding judge in civil court sole discretion over criminal jurisdictional matters, which could enable them to extend immunity to other parties in civil court who are suspected of criminal wrongdoing. When a suspect or potential suspect has a financial interest with the presiding judge, it can reasonably impact the judge's impartiality. Judicial impartiality is a crucial aspect of the criminal justice system, as it is necessary for upholding public trust and confidence in the judiciary.

63.     This requirement's two 'only' statements, which restrict the acceptance or initiation of a case to the exclusive request of the presiding judge, undermine procedural due process and the right to an impartial tribunal in criminal cases. This mandate that a criminal complaint must be determined exclusively by the presiding judge, regardless of their potential bias, violates the due process clause of the Fourteenth Amendment.

64.     This requirement, through its two 'only' statements, effectively eliminates the court's recusal function, which further contravenes the due process clause of the 14th Amendment.

65.     For the foregoing reasons, the Court should declare that the clause "due process" of Fourteenth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

66.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

67.     Such relief is warranted under the clause "due process" of Fourteenth Amendment of the United States Constitution.

### E. Fifth Claim for Relief
### Clause "equal protection" of 14th Amendment
### Regardless of income

## Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

68.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

69.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

70.     As Griffin v. Illinois (351 U.S. 12, 19, 1956) states, "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."; "assistance of counsel was found to be a requisite under the Sixth Amendment, as incorporated into the Fourteenth, even for a misdemeanor offense punishable by imprisonment for less than six months." Lassiter v. Department of Social Svcs., 452 U.S. 18, 36 (1981)

71.     This requirement violates the 14th Amendment's "equal protection" clause, regardless of income. While all civil court activities, motions, and hearings require payment for legal representation, individuals under the poverty line can only obtain free assistance of counsel for their defense in criminal court, and this assistance is not provided in civil court. This requirement mandates a criminal subject matter hearing to be held in civil court practically introduces the income factor into the criminal matter determination during the civil court proceeding. It reasonable to presume that some victims with different income will not spend legal fee to pursue the justice of criminal subject matter in the civil court proceeding as co-defendants instructed, ¶ 17, if the potential remedy cannot overcome the actual legal cost.

72.     This requirement undermines the principle of equal justice, which is one of the government's duties to its citizens.

73.     For the foregoing reasons, the Court should declare that the clause "equal protection " of Fourteenth Amendment, regardless of income, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

74.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

75.     Such relief is warranted under the clause "equal protection" of Fourteenth Amendment, regardless of income, of the United States Constitution.

### F. Sixth Claim for Relief
### Clause "equal protection" of 14th Amendment
### Regardless of one's status
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

76.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

77.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

78.     This requirement violates the 14th Amendment's "equal protection" clause, regardless of one's status. The government has a duty to provide equal access to justice for all, regardless of income, status, or identity. The defendant's requirement of "only accepting or opening an investigation into your claim of perjury at the request of the presiding judge" places the burden of proof on the victim's side. This effectively requires the victim to assume the responsibility of collecting evidence to convince the presiding judge in civil court during a hearing. The victim party must have the financial means and legal knowledge to initiate a legal proceeding, which means that wealth and education status can significantly impact the outcome of the court hearing for the criminal jurisdictional matters.

79.     For any other crimes that occur, the standard criminal procedural characters defined by Federal and State is as follows: crime victim -> law enforcement -> district attorney -> grand jury -> jury. On the website of the Bureau of Justice Statistics has provided a Criminal Justice System Flowchart attached hereto as Exhibit 5.

80.     However, for crimes that occur in Tarrant County court, the Tarrant County DA's office has set forth a different criminal procedural characters: court crime victim -> presiding judge in the civil court -> law enforcement -> district attorney -> grand jury -> jury.

81.     The actions of the co-defendants further proved that Tarrant County does not adhere to the Criminal Justice System Flowchart in the same way that other Americans do.

82.     For every other crime victim, the victim only needs to demonstrate the damage, and the government will take care of the rest. But for criminal victims who have suffered damage from civil court proceedings, the defendant has added new barriers. The victim must not only prove the damage but also spend money, time, and effort preparing all the evidence to prove it. The Tarrant County DA's office's requirement sends the message that all victims are equal, but court victims are less equal than others.

83.     Mark H Taylor, under his official capacity as a district or county attorney, **shall** draw complaints for the complainant, asks for signed and sworn, pursuant to the Texas Criminal Procedure, Art. 2.04. SHALL DRAW COMPLAINTS. This requirement revokes the Plaintiff, a complainant's equal protection right under Texas Criminal procedure.

84.     For the foregoing reasons, the Court should declare that the clause "equal protection " of Fourteenth Amendment, regardless of one's status, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

85.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

86.     Such relief is warranted under the clause "equal protection" of Fourteenth Amendment, regardless of one's status, of the United States Constitution.

### G. Seventh Claim for Relief
### Clause "Separation of Powers" of U.S. Const. ArtI.S1.3.1
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

87.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

88.     Defendant. under his administrative capacity has made a requirement as a custom. This custom says, "the requirement set forth by the TCDA's office" is "only accept or open an investigation into your claim of perjury only at the request of the presiding judge.". Exhibit 4 proved the existence of the actual requirement set forth by the TCDA's office. The Sheriff's department's following up reactions ¶14-¶20 also proved CID adheres to this widespread custom during the criminal investigation stage.

89.     This requirement violates the "Separation of Powers" clause under U.S. Const. ArtI.S1.3.1.

90.     "In Nixon v. Administrator of General Services, supra, upholding, against a separation of powers challenge, legislation providing for the General Services Administration to control Presidential papers after resignation, we described our separation of powers inquiry as focusing "on the extent to which [a provision of law] prevents the Executive Branch from accomplishing its constitutionally assigned functions." 433 U.S. at 433 U. S. 443 (citing United States v. Nixon, 418 U.S. at 418 U. S. 711-712.) [Footnote 13] In cases specifically involving the Judicial Branch, we have expressed our vigilance against two dangers: first, that the Judicial Branch neither be assigned nor allowed "tasks that are more properly accomplished by [other] branches," Morrison v. Olson, 487 U.S. at 487 U. S. 680-681, " Mistretta v. United States, 488 U.S. 383 (1989)

91.     This requirement set forth by Tarrant County Criminal District Attorney's Office, constructs an accumulation of excessive authority in a single Branch, the civil court, is exactly the "tyranny" definition which U.S. Supreme Court recognized, "In adopting this flexible understanding of separation of powers, we simply have recognized Madison's teaching that the greatest security against tyranny -- the accumulation of excessive authority in a single Branch -- lies not in a hermetic division between the Branches, but in a carefully crafted system of checked and balanced power within each Branch. "[T]he greatest security," wrote Madison," Mistretta v. United States, 488 U.S. 383 (1989)

92.     "Among those procedures that are fundamental to our adversary system is the use of an independent prosecutor to pursue charges against a criminal defendant. It is axiomatic that the prosecution of crimes is not a proper exercise of the judicial function. See, e.g., In re Murchison, 349 U.S. 133, 137 (1955); United States v. Cox, 342 F.2d 167, 171 (5th Cir.), cert. denied, 381 U.S. 935

(1965); see also Bagwell, 114 S. Ct. at 2563 (Scalia, J., concurring) (noting that the idea "[t]hat one and the same person should be able to make the rule, to adjudicate its violation, and to assess its penalty is out of accord with our usual notions of fairness and separation of powers"); Young, 481 U.S. at 816 (Scalia, J., concurring in judgment) (emphasizing that the judicial power "does not include the power to seek out law violators in order to punish them — which would be quite incompatible with the task of neutral adjudication"). Thus, when the contumacious conduct at issue occurs out of the presence of the court or does not interfere with an ongoing proceeding immediately before the court, the inherent contempt power does not permit a judge to dispense with a prosecutor altogether and fill the role himself. In re Murchison, 349 U.S. at 136-39 (holding that the judge violated the Due Process Clause of the Fourteenth Amendment when he initiated, prosecuted, and adjudicated indirect criminal contempt charges); see American Airlines, Inc. v. Allied Pilots Ass'n, 968 F.2d 523, 531 (5th Cir. 1992) (holding that the district court erred when it "sua sponte initiated the contempt proceeding, questioned the witnesses and otherwise acted as prosecutor, and then decided all factual and legal issues"); In re Davidson, 908 F.2d 1249, 1251 (5th Cir. 1990) (holding that the district court committed reversible error when it prosecuted and adjudicated criminal contempt charges); see also United States v. Griffin, 84 F.3d 820, 829 (7th Cir. 1996) (noting that the "crucial determinant" of whether appropriate procedural protections have been afforded in a criminal contempt proceeding is "the extent of the judge's intrusion" into the authority of the executive branch to prosecute crimes). But cf. In re Grand Jury Proceedings, 875 F.2d 927, 934 (1st Cir. 1989) (concluding that a prosecutor need not be appointed for indirect criminal contempt proceedings if the evidence is so simple that the judge conducting the proceedings may remain an impartial factfinder). Here, it is undisputed that the proceedings against Neal were criminal in nature. ... Because the district judge investigated the incriminating facts through extrajudicial means, introduced evidence against Neal, and otherwise presented the Government's case, he improperly assumed a prosecutorial role. As a result, we conclude that it was error for the district court to conduct the contempt proceeding without an independent prosecutor. " (emphasis added), U.S. v. Neal, 101 F.3d 993, 997-98 (4th Cir. 1996)

93.     "The separation of powers among the branches of government is a foundational principle to our system of government; the idea of lodging in one individual the power to prosecute and sit in judgment "summons forth . . . the prospect of the most tyrannical licentiousness." Bagwell, 114 S. Ct. at 2559 (internal quotation marks omitted). The assumption of the role of prosecutor by the district court is the kind of error that we have long understood to undermine the integrity of court proceedings:

"[T]here is no liberty, if the power of judging be not separated from the legislative and executive powers. . . . [L]iberty can have nothing to fear from the judiciary alone, but would have every thing to fear from its union with either of the other departments . . . ." The Federalist No. 78, at 491 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) (internal quotation marks omitted). Because errors that "render a trial fundamentally unfair" are not subject to harmless error review, Rose v. Clark, 478 U.S. 570, 577-78 (1986), we conclude that the failure of the district judge to appoint an independent prosecutor to pursue the charge of indirect contempt is an error that affects substantial rights." (emphasis added), U.S. v. Neal, 101 F.3d 993, 999 (4th Cir. 1996)

94.     "And in its day-today functioning, the grand jury generally operates without the interference of a presiding judge" United States v. Williams, 504 U.S. 36, 48 (1992);"Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." United States v. Williams, 504 U.S. 36, 49-50 (1992);

95.     " In sum, we find nothing like a consistent historical tradition supporting the proposition that the element of materiality in perjury prosecutions is to be decided by the judge. Since that proposition is contrary to the uniform general understanding (and we think the only understanding consistent with principle) that the Fifth and Sixth Amendments require conviction by a jury of all elements of the crime, we must reject those cases that have embraced it. Though uniform postratification practice can shed light upon the meaning of an ambiguous constitutional provision, the practice here is not uniform, and the core meaning of the constitutional guarantees is unambiguous." United States v. Gaudin, 515 US 506 518-19(1995)

96.     "The separation of powers doctrine does not contemplate the division of powers of government into rigidly separated compartments. This court has held that the doctrine was not designed to achieve a complete divorce among the three branches of government. ( People v. Reiner, 6 Ill.2d 337, 342.) The true meaning, in theory and in practice, of the doctrine is that the whole power of two or more of the branches of government shall not be lodged in the same hands." In re Estate of Barker, 63 Ill. 2d 113, 119 (Ill. 1976)

97.     "It is the responsibility and duty of the State's Attorney, and only the State's Attorney, to evaluate the evidence and reach a determination of whether and what charges may be criminally

brought against a defendant. <u>The court is not authorized</u> to order a State's Attorney to file a criminal information or to file a specific charge against a defendant. ( Moran, 94 Ill.2d at 46.) For the court to assume the role of prosecutor in a criminal matter and determine what criminal offense should be charged and to thereafter proceed with the disposition of that offense over the State's objection would be a violation of the constitutional doctrine of separation of powers." Moran, 94 Ill.2d at 46. In re J.J, 142 Ill. 2d 1, 7 (Ill. 1991)

98.     For the foregoing reasons, the Court should declare that the clause "Separation of Powers " of Article 1, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

99.     The Court should issue a preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

100.    Such relief is warranted under the clause "Separation of Powers " of Article 1, of the United States Constitution.

### H. Eighth Claim for Relief
### <u>Official Capacity of Defedant and Co-Defedants</u>
### <u>U.S. Const. art. I</u>
### <u>U.S. Const. amend. I, V, VI, XIV</u>
### <u>Compensatory and punitive damages, 42 U.S.C. § 1983</u>

101.    Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

102.    The defendant set forth a requirement as a custom. This custom was presented to the Plaintiff in written form in the evidential letter, Exhibit 4. In the letter, it states, "requirement set forth by the TCDA's office". "Requirement set forth" indicates that this is an established policy. "By the TCDA's office" suggests that this is an official policy. The letter also detailed the content of the custom by stating, "we only accept or open an investigation into your claim of perjury at the request of the presiding judge.". The follow-up reactions by co-defendants of the Sheriff's department's CID, as described in Paragraphs ¶14-¶ 20, which involved declining the Plaintiff's multiple criminal complaints, further demonstrate that CID persistently adheres to this longstanding and widespread practice during the criminal investigation stage.

103.     Co-defendants' interpretation of the meaning "at the request of the presiding judge" of this policy as described in Paragraphs ¶17, further proved that CID employees, co-defendants understood the details of this established policy by the TCDA's office.

104.     CRIM P Art. 20A.051 "DUTIES OF GRAND JURY.AAThe grand jury <u>shall inquire into all offenses subject to indictment</u> of which any grand juror may have knowledge or of which the grand jury is informed by the attorney representing the state or by <u>any other credible person</u>." (emphasis added).

105.     "As his first issue, the Attorney General contends that the trial court's directive to prosecute Buckley's private criminal complaint, despite the Attorney General's policy-based discretionary decision to the contrary, violates the separation of powers doctrine. Specifically, he asserts that courts may never evaluate prosecutorial decisions that are based on policy determinations. We disagree. " *Com. v. Brown*, 447 Pa. Super. 454, 461 (Pa. Super. Ct. 1995)

106.     "However, the separation of powers doctrine does not entirely preclude judicial review of discretionary decisions made by the executive branch. Our supreme court has stated that "the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." *In re Petition of Acchione* <u>425 Pa. 23, 30</u>, <u>227 A.2d 816, 820</u> (1967), quoting *Blumenschein v. Pittsburgh Hous. Auth.,* <u>379 Pa. 566, 572-73</u>, <u>109 A.2d 331, 335</u> (1954), *appeal dismissed,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955). Furthermore, this standard has been applied to discretionary decisions made by a prosecutor. *See Commonwealth v. Slick,* <u>432 Pa. Super. 563, 565-65</u>, <u>639 A.2d 482, 483</u>, *appeal denied,* <u>538 Pa. 669</u>, <u>649 A.2d 671</u> (1994). " *Com. v. Brown*, 447 Pa. Super. 454, 462 (Pa. Super. Ct. 1995)

107.     "When a trial court is asked to review a prosecutor's disapproval of a private criminal complaint, the trial court must first determine the rationale behind the prosecutor's decision. If the prosecutor's decision was based upon a legal evaluation of the sufficiency of the complaint, then the trial court must undertake a *de novo* review of the complaint to ascertain whether it establishes a *prima facie* cause of action. If, however, the prosecutor's decision was based upon a policy determination that it would not be in the best interests of the Commonwealth to prosecute, then the trial court must defer

to the prosecutor's discretion absent a gross abuse of that discretion." *Com. v. Brown*, 447 Pa. Super. 454, 466 (Pa. Super. Ct. 1995)

108.    "This in no way suggests that the common pleas court may substitute its judgment for that of the prosecutor. But where the prosecutor seeks to rest the decision not to prosecute on policy grounds, the prosecutor must be prepared to come forward with a clear statement as to the particular policy that dictates withholding prosecution as well as how that policy relates to the particular facts being advanced by the private prosecutor." *Com. v. Brown*, 447 Pa. Super. 454, 467 (Pa. Super. Ct. 1995)

109.    "Rather, it appears that Brown's perjury undermined the investigation into Wilson's murder and, thus, more strongly supports the conclusion that he should be punished for his wrongdoing. Accordingly, we agree with the trial court's conclusion that this assertion cannot serve as the basis for a policy that requires the disapproval of this private complaint" *Com. v. Brown*, 447 Pa. Super. 454, 468 (Pa. Super. Ct. 1995)

110.    "In his brief to this Court, the Attorney General argues that the trial court simply substituted its opinion for that of the prosecutor and labelled the prosecutor's decision a gross abuse of discretion. Initially, we note that a court does not have the authority to substitute its judgment for that of the prosecutor in evaluating the viability of a private criminal complaint. *Cf. In re Petition of Acchione, supra*. However, in the present case, we conclude that the Attorney General has failed to produce any evidence of a clearly defined policy that is consistently used to review the merits of a private criminal complaint. A prosecutor, in reviewing a private criminal complaint, cannot simply assert that it is against its policy to prosecute. Instead, the prosecutor must demonstrate that a clearly defined policy has been established that can be uniformly applied to such complaints." *Com. v. Brown*, 447 Pa. Super. 454, 469 (Pa. Super. Ct. 1995)

111.    "Although the Attorney General claims that its decision not to prosecute was a policy decision, this vague claim of "policy" is unsupported by reference to a specific policy that requires the disapproval of this private criminal complaint. Accordingly, we conclude that the trial court did not abuse its narrowly limited discretion when it found that the Attorney General failed to advance sufficient policy reasons in support of the disapproval of the private criminal complaint." Com. v. Brown, 447 Pa. Super. 454, 470 (Pa. Super. Ct. 1995)

112.     The defendant and co-defendants, under their official administrative and investigatory capacities, violate 42 USC § 1983, which states that 'every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity.' 'The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails,' Wyatt v. Cole, 504 U.S. 158 (1992). The defendant and co-defendants knew that their action of refusing to open or investigate a criminal complaint case under an unlawful countywide policy resulted in the deprivation of the Plaintiff's constitutional rights under Article One, and the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

113.     A 42 U.S.C. § 1983 claim against the official capacities of the defendant and co-defendants is a claim against Tarrant County.

114.     As a result of the actions taken by the defendant and co-defendants, the Plaintiff was damaged as described in Paragraphs ¶22-¶27.

115.     For the foregoing reasons, the Court should reward Plaintiff compensatory damages pursuant to the claims described in Paragraphs ¶24, pursuant to 42 USC § 1983.

116.     For the foregoing reasons, the Court should reward Plaintiff punitive damages pursuant to the claims described in Paragraphs ¶22, ¶25-¶27, in an amount of no less than $250,000.00, pursuant to 42 USC § 1983.

117.     For the foregoing reasons, the Court should reward Plaintiff's expenses and costs described in Paragraphs ¶23. pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

118.     The Court should reward any and all other such relief that the Court deems just and proper.

### I. Nine Claim for Relief
### Private Capacity of Mark H Taylor, Defendant
### *U.S. Const.* amend. XIV
### Compensatory and punitive damages, 42 U.S.C. § 1983

119.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

120.     Mark H. Taylor, the defendant, is an investigator working at the Tarrant County Criminal District Attorney's Office. He assumed an investigatory role under his administrative/investigatory capacity when he established a requirement as a custom of the Tarrant County Criminal District Attorney's Office.

121.     Defendant under his private capacity violates 42 USC § 1983, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...", "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992). Defendant chose to not uphold the clause "shall" of Tex. Code Crim. Proc § 2.04 and 2.05, his action resulted in the deprivation of the Plaintiff's constitutional rights, the clause "equal protection" of Fourteenth Amendments to the U.S. Constitution, caused Plaintiff's damages described in Paragraphs ¶24-¶26. Plaintiff felt harassed and intimidated by defendant's action of not upholding the criminal justice legal process as demonstrated in Exhibit 5.

122.     It is a reasonable expectation that Mark H. Taylor should have known that inserting a judge role at the beginning of criminal procedures is not found in any material published within the territories of the United States. Despite this knowledge, he still chose to act under the color of law to revoke the constitutional frameworks of this country. It is a reasonable expectation for Mark H. Taylor to protect the constitution under his official duty, instead of allowing an unprecedented constitutional violation to occur, which jeopardizes the constitutional rights of people countywide.

123.     For the foregoing reasons, the Court should reward Plaintiff compensatory damages pursuant to the claims described in Paragraphs ¶24, in an amount of no less than $1000, pursuant to 42 USC § 1983.

124.     For the foregoing reasons, the Court should reward Plaintiff punitive damages pursuant to the claims described in Paragraphs ¶25-¶26, in an amount of no less than $5000, pursuant to 42 USC § 1983.

125.     For the foregoing reasons, the Court should reward Plaintiff's expenses and costs described in Paragraphs ¶23. pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

126.     The Court should reward any and all other such relief that the Court deems just and proper.

## J. Tenth Claim for Relief
### Private Capacity of Richard B Harwell, co-defendant
### _U.S. Const._ amend. XIV
### 18 USC § 3771
### Compensatory and punitive damages, 42 U.S.C. §§ 1983

127.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

128.     Richard B Harwell, co-defendant, is a peace officer, a sergeant working in the Sheriff's department of Tarrant County.

129.     Every peace officer of Texas must be sworn in with following oath, "protect and defend the Constitution and laws of the United States and of Texas". Therefore, it is a reasonable expectation that a peace officer shall "protect and defend the Constitution and laws of the United States and of Texas".

130.     Police's code of ethics also requires "AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all persons to liberty, equality and justice." (emphasis added).

131.     Richard B Harwell, supervisory role of CID, under his private capacity, violates 42 USC § 1983, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that ..." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

132.     Richard B Harwell knowingly refused to terminate a series of acts by his subordinate David F Bennett, or himself is directly involved with the acts described in Paragraphs ¶17-¶21.

133.     Even if the custom set forth by the TCDA's office is legitimate, this custom itself never eliminates the possibility of suspects being criminal and the Plaintiff being a victim. The CID has

refused to open any new criminal complaints from the Plaintiff without obtaining any information on the acts described in Paragraphs 17-21. Without obtaining any other information, the only known fact that the CID had was the identity of the Plaintiff. These actions resulted in the deprivation of all of the Plaintiff's victim rights within the executive branches via the CID. The decision to refuse communication resulted in no victim rights being upheld. Tipping off Suspect 1 also increased the risk of the Plaintiff facing threats. Richard B. Harwell, in his supervisory role within the CID, is responsible for these actions.

134.    Richard B Harwell chose to not uphold the clause "reasonably protected" of 18 USC § 3771, this action resulted in the deprivation of the Plaintiff's constitutional rights, the clause "equal protection" of Fourteenth Amendments to the U.S. Constitution, and in the deprivation of the Plaintiff's right to be reasonably protected from the accused, by the Federal Rights of Crime Victims Act laws. This action caused Plaintiff's damages described in Paragraphs ¶24-¶26.

135.    It is a reasonable expectation that Richard B Harwell should have known that inserting a judge role at the beginning of criminal procedures is not found in any material published within the territories of the United States. Despite this knowledge, he still chose to act under the color of law to revoke the constitutional frameworks of this country. It is a reasonable expectation for Richard B Harwell to protect the constitution under his official duty, instead of allowing an unprecedented constitutional violation to occur, which jeopardizes the constitutional rights of people countywide.

136.    For the foregoing reasons, the Court should reward Plaintiff compensatory damages pursuant to the claims described in Paragraphs ¶24, in an amount of no less than $100, pursuant to 42 USC § 1983.

137.    For the foregoing reasons, the Court should reward Plaintiff punitive damages pursuant to the claims described in Paragraphs ¶25-¶26, in an amount of no less than $100, pursuant to 42 USC § 1983.

138.    For the foregoing reasons, the Court should reward Plaintiff's expense described in Paragraphs ¶23. pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

139.    The Court should reward any and all other such relief that the Court deems just and proper.

### K. Eleventh Claim for Relief
### Private Capacity of David F Bennett, co-defendant
### *U.S. Const.* amend. XIV
### 18 USC § 3771
### Compensatory and punitive damages, 42 U.S.C. §§ 1983

140.     Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

141.     David F Bennett, co-defendant, is a peace officer, a deputy sheriff working in the Sheriff's department of Tarrant County.

142.     Every peace officer of Texas must be sworn in with following oath, "protect and defend the Constitution and laws of the United States and of Texas". Therefore, it is a reasonable expectation that a peace officer shall "protect and defend the Constitution and laws of the United States and of Texas".

143.     Police's code of ethics also requires "AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all persons to liberty, equality and justice." (emphasis added).

144.     David F Bennett, investigatory role of CID, under his private capacity, violates 42 USC § 1983, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that ..." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" *Wyatt v. Cole, 504 U.S. 158 (1992).*

145.     David F Bennett directly involved with the acts described in Paragraphs ¶17-¶21.

146.     Even if the custom set forth by the TCDA's office is ruled constitutionally legitimate in this case, this custom itself never eliminates the possibility of suspects being criminal and the Plaintiff being a victim. It is Plaintiff's belief that Richard B Harwell has refused to open any new criminal complaints from the Plaintiff without obtaining any information on the acts described in Paragraphs ¶17-¶21. Without obtaining any other information, that meant the only known fact that the CID had at time, was the identity of the Plaintiff. These denial actions resulted in the deprivation of all the

Plaintiff's victim rights within the executive branches via the CID. The decision to refuse communication resulted in no victim rights being upheld. David F Bennett is one the two people who met Plaintiff in the Sheriff Office on that day. Later, suspect 1 was quickly informed about the Plaintiff's act described in Paragraphs ¶21. Tipping off suspect 1 also increased the risk of the Plaintiff facing threats, caused mental damage to the Plaintiff as described in ¶27. David F Bennett, in his investigatory role of CID, is responsible for these actions.

147.    David F Bennett chose to not uphold the clause "reasonably protected" of 18 USC § 3771, this action resulted in the deprivation of the Plaintiff's constitutional rights, the clause "equal protection" of Fourteenth Amendments to the U.S. Constitution, and in the deprivation of the Plaintiff's right to be reasonably protected from the accused, by the Federal Rights of Crime Victims Act laws. This action caused Plaintiff's damages described in Paragraphs ¶24-¶26.

148.    It is a reasonable expectation that David F. Bennett should have known that inserting a judge role at the beginning of criminal procedures is not found in any material published within the territories of the United States. Despite this knowledge, he still chose to act under the color of law to revoke the constitutional frameworks of this country. It is a reasonable expectation for David F. Bennett to protect the constitution under his official duty, instead of allowing an unprecedented constitutional violation to occur, which jeopardizes the constitutional rights of people countywide.

149.    For the foregoing reasons, the Court should reward Plaintiff compensatory damages pursuant to the claims described in Paragraphs ¶24, in an amount of no less than $100, pursuant to 42 USC § 1983.

150.    For the foregoing reasons, the Court should reward Plaintiff punitive damages pursuant to the claims described in Paragraphs ¶25-¶26, in an amount of no less than $100, pursuant to 42 USC § 1983.

151.    For the foregoing reasons, the Court should reward Plaintiff's expense described in Paragraphs ¶23. pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

152.    The Court should reward any and all other such relief that the Court deems just and proper.

### Twelve Claim for Relief
### *U.S. Const.* amend. XIV, *U.S. Const.* art. I
### Perjury and prosecutorial discretion
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

153.    Plaintiff herein incorporates by reference paragraphs ¶13-¶27 as if set forth fully herein.

154.    In March 2023, the Plaintiff contacted the Texas State Representative's office and requested their assistance in seeking a Texas State Attorney General's opinion regarding the defendants' and co-defendants' persistent actions of refusing to proceed with perjury and aggravated perjury offenses under their official capacity.

155.    The Texas State Representative's office approached the Office of the Attorney General and received a response stating that these actions fall within the realm of well-known "prosecutorial discretion," and therefore, there was no need to issue an opinion.

156.    This answer from OAG, when combined with the acts described herein, raises a Federal constitutional question that requires further interpretation. Does the executive branch have prosecutorial discretion to choose not to prosecute perjury during court proceedings?

157.    According to (Frederick, Bruce, Stemen, Don The Anatomy of Discretion: An Analysis of Prosecutorial Decision Making. *Technical Report*. NCJ 240334, New York, NY: Vera Institute [producer]; National Institute of Justice [distributor]), it says, "Prosecuting attorneys enjoy broader discretion in making decisions that influence criminal case outcomes than any other actors in the American justice system. That they do so with little or no public scrutiny suggests questions about justice and fairness" (emphasis added). Furthermore, "Researchers found that prosecutors' decisions were guided by two basic questions: "Can I prove the case?" and "Should I prove the case?"".

158.    When Defendant and Co-defendants refused to accept or open a criminal complaint, they were in investigator role, not in prosecutor role. They did not have prosecutorial capacity. Without having a criminal complaint case, they did not have a standing (a case) to make determination of "Can I prove the case?" and "Should I prove the case?". Therefore, Defendant has abused his official capacity under the name of prosecutorial discretion.

159.     "his alleged misconduct occurred while he was acting in an investigative capacity, for which only qualified, but not absolute, immunity is available. We hold that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir. 2000)

160.     "for example, Judge (now Justice) Stevens recognized that since a police officer is entitled to only qualified immunity for his police actions, then a prosecutor performing the functions of a police officer should also be accorded only qualified immunity because "it seems neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." This concern for symmetry of treatment appears as a critical policy for the majority as well: "Regardless of his official status, a prosecutor functioning primarily as an investigator should be accorded only the qualified immunity typically conferred on other investigative officers." Briggs v. Goodwin, 569 F.2d 10, 37 (D.C. Cir. 1977). "

161.     At last, the interpretation from OAG, which claimed that TCDA's office have prosecutorial discretion to decide not to prosecute the offense type of perjury during court proceedings is also a wrong interpretation which the Plaintiff needs the court for further declaration.

162.     The broad prosecutorial discretion power granted by presidential laws has not covered the subject of specific offense of perjury. The plaintiff requests the Court to rule an exception on applying broad prosecutorial discretion power for the reasons mentioned below,

163.     The Legislative branch is solely responsible for creating new laws or modifying existing laws. When the executive branch exercises broad prosecutorial discretion by choosing not to prosecute perjury offenses during court proceedings, they infringe upon the clause of "Separation of Powers" stated in Article 1. By doing so, they effectively assume legislative powers by filtering out specific laws, thereby restricting the authority of the legislative branch.

164.     The Due Process Clause of the Fourteenth Amendment states that no person shall be " deprived of life, liberty, or property without due process of law.". To determine that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal.

165.     "Congress has also enacted that every person, having taken an oath to testify truly, "before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered," who wilfully and contrary to such oaths states any material matter which he does not believe to be true, is guilty of perjury, and <u>shall</u> be punished by fine and imprisonment. "(emphasis added) Rev. Stat. § 5392. In re Loney, 134 U.S. 372, 374 (1890).

166.     The determination privilege regarding the exemption from punishment for committing perjury carries significant implications for the integrity of an impartial tribunal. Granting the executive branch prosecutorial discretion over this privilege not only undermines the fundamental principle of separation of powers but also opens the door for an intrusion into the jurisdictional authority of the courts. By bestowing such power upon the executive branch, the Court effectively grants it the ability to manipulate and interfere with the due process rights of individuals involved in an impartial tribunal.

167.     Based on the foregoing reasons, in this case, it is imperative for the Court to undertake a Federal constitutional interpretation of the term "prosecutorial discretion" as defined in established legal precedents. The Court should unequivocally proclaim that the "Separation of Powers" clause in Article 1, along with the "due process" clause of the Fourteenth Amendment, unequivocally prohibits executive branches from exercising prosecutorial discretion to refrain from prosecuting perjury offenses during court proceedings. Such a practice is inherently unlawful, as it violates the U.S. Constitution As-Applied.

## VIII. Prayer for Relief

Based on the foregoing, Plaintiff respectfully requests for the following relief:

168.     For the first claim, declare that the clause "unless ... a grand jury" of Fifth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

169.     For the first claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

170.    For the second claim, declare that the clause " witness against himself" of Fifth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

171.    For the second claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

172.    For the third claim, declare that the clause "to have the assistance of counsel for his defense." of Sixth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

173.    For the third claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

174.    For the fourth claim, declare that the clause "due process" of Fourteenth Amendment bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

175.    For the fourth claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

176.    For the fifth claim, declare that the clause "equal protection " of Fourteenth Amendment, regardless of income, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

177.    For the fifth claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

178.    For the sixth claim, declare that the clause "equal protection " of Fourteenth Amendment, regardless of one's status, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

179.     For the sixth claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

180.     For the seventh claim, declare that that the clause "Separation of Powers " of Article 1, bars "the requirement set forth by TCDA's office...", because it is facially unlawful to the U.S. constitution.

181.     For the seventh claim, issue preliminary and permanent injunction enjoining the executive branches of the Tarrant County from seeking any influence from the judicial branch about criminal subject matters during the investigation and prosecution stages.

182.     For the first claim to seventh claim, the Court should reward Plaintiff's expenses and costs described in Paragraphs ¶23. pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

183.     For the claim first to claim seventh, the Court should reward any and all other such relief that the Court deems just and proper.

184.     For the eighth claim, the Court should reward compensatory and punitive damages relief pursuant to 42 U.S.C. § 1983.

185.     For the eighth claim, the Court should reward expenses and costs against the defendants, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

186.     For the eighth claim, the Court should reward any and all other such relief that the Court deems just and proper.

187.     For the nineth claim, the Court should reward compensatory and punitive damages relief pursuant to 42 U.S.C. § 1983.

188.     For the nineth claim, the Court should reward expenses and costs against the defendants, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

189.    For the nineth claim, the Court should reward any and all other such relief that the Court deems just and proper.

190.    For the tenth claim, the Court should reward compensatory and punitive damages relief pursuant to 42 U.S.C. § 1983.

191.    For the tenth claim, the Court should reward expenses and costs against the defendants, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

192.    For the tenth claim, the Court should reward any and all other such relief that the Court deems just and proper.

193.    For the eleventh claim, the Court should reward compensatory and punitive damages relief pursuant to 42 U.S.C. § 1983.

194.    For the eleventh claim, the Court should reward expenses and costs against the defendants, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed. R. Civ. P. 54.

195.    For the eleventh claim, the Court should reward any and all other such relief that the Court deems just and proper.

196.    For the twelve claims, the Court should answer the Federal constitutional interpretation question and make a declaratory ruling.

197.    Grant Plaintiff a jury trial on all appropriate issues.

Respectfully submitted,


[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] [arnold200@gmail.com]

**ORIGINAL**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2023 JUN -8 PM 3: 12

DEPUTY CLERK_____

# EXHIBIT 1

# M Gmail

**Arnold Yan** ████████████████

## Fwd: Conghua Yan - ████████████████████████

**Bert Pigg** <WAPigg@pigglawfirm.com>                    Thu, Jul 21, 2022 at 9:09 AM
To: Arnold Yan ████████████████ Doug Burks <doug@pigglawfirm.com>, ████████
████████████████████████████████

Arnold:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Also attached is the Associate Judge's Order from the April 13, 2022 hearing wherein you were ordered to withdraw $50K from your 401K,  So, you will need to do that.  I suggest you contact your 401 K administrator to have them cut you 2 certified checks - one made payable to The Barrows Law Firm and the other to my law firm.  If they won't do that, have them cut you a certified check for the full $50k, made payable to you and me.  I will then deposit it in my trust account and cut a check to Leslie Barrows.

I will respond to the USBank letter telling them that it is not a QDRO as the April 13, 2022 order does not meet the definition.  I have already told Leslie Barrows this.  I will prepare a letter today and have you sign off on it as well.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Bert Pigg

---------- Forwarded message ---------

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Good day.

**\*PLEASE REPLY TO CONFIRM RECEIPT OF THIS E-MAIL\***

Attached please find the PDF transcript for the deposition of the above-mentioned witnesses.

Please follow these instructions so that the deposition is processed as efficiently as possible:

- Have the witness read the deposition and sign it before a Notary Public. A separate signature page has been attached for your convenience. (Notary services, if needed, are available at our office. Please call ahead to schedule.)

- The Rules of Civil Procedure require that corrections or additions be noted only on the loose corrections page provided.

- Return the executed errata page(s) to the address listed below for further processing:



--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391

www.williamapiggpllc.com

**Mailing Address:**
10455 N. Central Expressway
Suite 109
Dallas, Texas 75231

**Physical Address:**
9638 Greenville Avenue
Dallas, Texas 75243

This is a transmission from the law firm of William A. Pigg, PLLC and may contain information which is privileged, confidential, and protected by the attorney-client privilege and/or the attorney work product doctrine. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and any attachments and notify us immediately at our telephone number (214) 551-9391.



The Law Offices of William A. Pigg, PLLC Mail - In ███████████████████████████████



Bert Pigg <wapigg@pigglawfirm.com>

## In the Matter of the ███████████████████████ Order

1 message

Leslie Barrows <lbarrows@barrowsfirm.com>                     Fri, Aug 5, 2022 at 1:06 PM
To: "William A. Pigg (Other)" <wapigg@pigglawfirm.com>
Cc: Sara Brandt <sara@barrowsfirm.com>, Samantha Ybarra <samantha@barrowsfirm.com>

Mr. Pigg:

████████████████████████████████████████████████████████████ce until
█████████████████████████████████████████████████████████████████ He said you
are writing to US Bank objecting to the Order that you signed off and the Order that the judge has signed off on.

In order for us to obtain our attorney's fees, the order must say that the fees are for **spousal support**. There is no way
around it ████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Very Truly Yours,

*Leslie Barrows*

**Attorney and Mediator**

*IF THIS IS AN URGENT MATTER CALL THE OFFICE DIRECTLY. I HOPE TO RESPOND TO EMAILS WITHIN 48
HOURS MONDAY THROUGH THURSDAY GIVEN MY TRIAL SCHEDULE.*

**The Barrows Firm, P.C.** *(located next door to Southlake Style Magazine)*

520 E. Southlake Blvd., Suite 140

Southlake, Texas 76092

**Phone: 817-481-1583**

www.barrowsfirm.com

████████████████████████████████████████████████████
████████████████████████████████████████████████████

**The Barrows Firm Team:**

████████████████████████████████████████████████████

# M Gmail

## 401K

**Bert Pigg** <WAPigg@pigglawfirm.com>                          Sun, Aug 7, 2022 at 5:30 AM
To: Arnold Yan <
Doug Burks <doug@pigglawfirm.com>

No.

If you recall, at the hearing in April, you were ordered to get 50K from your 401k.  You were to have done it within 30 days - meaning mid-May.   Leslie tried to get her 25k via a QDRO, claiming it was for spousal support - not attorney's fees as ordered.  I did not sign off on that QDRO because it would not be true and I'm not going to sign a court document that is not true.

Thanks
[Quoted text hidden]
--
[Quoted text hidden]

# M Gmail

## 401K

**Bert Pigg** <WAPigg@pigglawfirm.com>                                    Mon, Aug 8, 2022 at 7:12 AM
To: Arnold Yan
Cc:                                                          Doug Burks
<doug@pigglawfirm.com>

In that case, the legal issue is that we either have to lie and accept the QDRO or you need to figure out some other way to get 25K for Barrows.  As for my 25K, I'm not going to put myself in a position where I'm taking money in a non-truthful way, so, regardless of Barrows, you'll have to figure out something for my end of things.
[Quoted text hidden]

 Gmail

**Bert Pigg** <WAPigg@pigglawfirm.com>
To: Arnold Yan

Wed, Nov 2, 2022 at 4:19 PM

---------- Forwarded message ---------
From: **Bert Pigg** <WAPigg@pigglawfirm.com>
Date: Mon, Aug 29, 2022 at 12:41 PM
Subject: Re:
To: Leslie Barrows <lbarrows@barrowsfirm.com>
Cc: Cheryl Lopez (Work) <cdlopez@tarrantcounty.com>, Sara Brandt <sara@barrowsfirm.com>, Samantha Ybarra <samantha@barrowsfirm.com>

Ms. Barrows:

US Bank approved the QDRO, so you'll be getting your money in due course.

Bert Pigg

On Mon, Aug 29, 2022 at 12:32 PM Leslie Barrows <lbarrows@barrowsfirm.com> wrote:

Cheryl:

We need to clarify with Judge DeAngelis a ruling for attorney's fees in her AJ Report. Do you have dates and times that she would be available via Zoom and/or In Person?

Very Truly Yours,

*Leslie Barrows*

**Attorney and Mediator**

**IF THIS IS AN URGENT MATTER CALL THE OFFICE DIRECTLY. I HOPE TO RESPOND TO EMAILS WITHIN 48 HOURS MONDAY THROUGH THURSDAY GIVEN MY TRIAL SCHEDULE.**

**The Barrows Firm, P.C. (located next door to Southlake Style Magazine)**

520 E. Southlake Blvd., Suite 140

Southlake, Texas 76092

**Phone: 817-481-1583**

www.barrowsfirm.com

**The Barrows Firm Team:**

**Associate Attorneys:** samantha@barrowsfirm.com and anthony@barrowsfirm.com

**Senior Paralegal and Office Administrator:** sara@barrowsfirm.com

**Legal Assistant:** sydney@barrowsfirm.com

**Legal Assistant/Intake Coordinator:** caroline@barrowsfirm.com

**Waylon the French Bulldog @waylon_the_frenchman**

**Office Hours – CLOSED for lunch daily from 12PM to 1PM and CLOSED EARLY on Fridays**

Monday - Thursday: **8:30AM to 12:00PM** and **1:00PM to 5:00PM**

Friday: **8:30AM to 12:00PM (by appointment only)**

*VACATION/TRIAL/SEMINAR NOTICE: I WILL BE OUT OF THE OFFICE AND UNAVAILABLE 9/5/22, 9/9/22, 10/03/22, 10/7/22, 10/11/22, 10/20/22-10/21/22, 10/31/22, 11/21/22-11/25/22, 12/08/22, 12/19/22-01/02/23. 1/16/23, 2/17/23, 2/20/23, 3/13/23-3/17/23, 4/7/23, 4/10/23, 5/25/23*

--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391
www.williamapiggpllc.com

**Mailing Address:**
10455 N. Central Expressway
Suite 109
Dallas, Texas 75231

**Physical Address:**
9638 Greenville Avenue
Dallas, Texas 75243

This is a transmission from the law firm of William A. Pigg, PLLC and may contain information which is privileged, confidential, and protected by the attorney-client privilege and/or the attorney work product doctrine. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and any attachments and notify us immediately at our telephone number (214) 551-9391.

--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391
www.williamapiggpllc.com

**Mailing Address:**                              **Physical Address:**
10455 N. Central Expressway          9638 Greenville Avenue
Suite 109                                          Dallas, Texas 75243
Dallas, Texas 75231

This is a transmission from the law firm of William A. Pigg, PLLC and may contain information which is privileged, confidential, and protected by the attorney-client privilege and/or the attorney work product doctrine. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and any attachments and notify us immediately at our telephone number (214) 551-9391.

# EXHIBIT 2



CHAIR
KELLI M. HINSON

VICE CHAIR
MICHAEL C. GROSS

MEMBERS
JASON BOATRIGHT
JENNIFER CAUGHEY
ARTHUR C. D'ANDREA
ANDREW D. GRAHAM
DAVID IGLESIAS
W.C. KIRKENDALL
RUDOLPH K. METAYER
WILLIAM W. OGDEN
COURTNEY C. SCHMITZ
NANCY J. STONE

EXECUTIVE DIRECTOR
& GENERAL COUNSEL
JENNY HODGKINS

DEPUTY DIRECTOR
& COUNSEL
MATTHEW J. GREER

EXECUTIVE ASSISTANT
JACKIE TRUITT

### THE BOARD OF DISCIPLINARY APPEALS
APPOINTED BY THE SUPREME COURT OF TEXAS

January 20, 2023

Conghua Yan

RE:   Disposition of Appeal Notice
      Conghua Yan  v. Leslie Starr  Barrows
      202206760; BODA Case No. 67344

Dear Mr. Yan:

On January 19, 2023, the Board of Disciplinary Appeals appointed by the Supreme Court of Texas considered your appeal from the dismissal of the above grievance by the Office of the Chief Disciplinary Counsel of the State Bar of Texas. After reviewing the grievance as filed with the State Bar Chief Disciplinary Counsel's office and no other information, the Board grants the appeal and reverses the dismissal, finding that the grievance alleges a possible violation of the following Texas Disciplinary Rules of Professional Conduct:

Rule(s) 4.01 (a)

The Board of Disciplinary Appeals will now return the case to the Office of the Chief Disciplinary Counsel for investigation and a determination of whether there is just cause to believe that the attorney has committed professional misconduct.  The Office of the Chief Disciplinary Counsel will notify both parties of each step of the process, including asking the attorney to respond to the complaint.  For information concerning the handling of the case from this point forward, please contact the regional Office of the Chief Disciplinary Counsel in charge of your case.

Information concerning the disciplinary system, the Texas Disciplinary Rules of Professional Conduct, and the Texas Rules of Disciplinary Procedure are available at www.texasbar.com.  The Board's Internal Procedural Rules are available at www.txboda.org.

Very truly yours,

Jenny Hodgkins
Executive Director & General Counsel

JH/jt

cc:   Leslie Starr  Barrows

      Office of the Chief Disciplinary Counsel
      State Bar of Texas
      PO Box 13287
      Austin, TX 78711
      (512) 427-1350
      (877) 953-5535 toll free

# EXHIBIT 3

CHAIR
   KELLI M. HINSON

VICE CHAIR
   MICHAEL C. GROSS

MEMBERS
   JASON BOATRIGHT
   JENNIFER CAUGHEY
   ARTHUR C. D'ANDREA
   ANDREW D. GRAHAM
   DAVID IGLESIAS
   W.C. KIRKENDALL
   RUDOLPH K. METAYER
   WILLIAM W. OGDEN
   COURTNEY C. SCHMITZ
   NANCY J. STONE

EXECUTIVE DIRECTOR
& GENERAL COUNSEL
   JENNY HODGKINS

DEPUTY DIRECTOR
& COUNSEL
   MATTHEW J. GREER

EXECUTIVE ASSISTANT
   JACKIE TRUITT



# THE BOARD OF DISCIPLINARY APPEALS

APPOINTED BY THE SUPREME COURT OF TEXAS

April 06, 2023

Conghua Yan

RE:   Disposition of Appeal Notice
       Conghua Yan  v. William Albert  Pigg
       202300469; BODA Case No. 67592

Dear Mr. Yan:

   On April 06, 2023, the Board of Disciplinary Appeals appointed by the Supreme Court of Texas considered your appeal from the dismissal of the above grievance by the Office of the Chief Disciplinary Counsel of the State Bar of Texas. After reviewing the grievance as filed with the State Bar Chief Disciplinary Counsel's office and no other information, the Board grants the appeal and reverses the dismissal, finding that the grievance alleges a possible violation of the following Texas Disciplinary Rules of Professional Conduct:

Rule(s) 1.05 (b)

   The Board of Disciplinary Appeals will now return the case to the Office of the Chief Disciplinary Counsel for investigation and a determination of whether there is just cause to believe that the attorney has committed professional misconduct.  The Office of the Chief Disciplinary Counsel will notify both parties of each step of the process, including asking the attorney to respond to the complaint.  For information concerning the handling of the case from this point forward, please contact the regional Office of the Chief Disciplinary Counsel in charge of your case.

   Information concerning the disciplinary system, the Texas Disciplinary Rules of Professional Conduct, and the Texas Rules of Disciplinary Procedure are available at www.texasbar.com.  The Board's Internal Procedural Rules are available at www.txboda.org.

Very truly yours,

Jenny Hodgkins
Executive Director & General Counsel

JH/jt

cc:   William Albert  Pigg

       Office of the Chief Disciplinary Counsel
       State Bar of Texas
       PO Box 13287
       Austin, TX 78711
       (512) 427-1350
       (877) 953-5535 toll free

# EXHIBIT 4

 **Tarrant County Sheriff's Department**
**Criminal Investigation Division** 

Detective d Bennett #74751
Criminal Investigation Division
200 Taylor Street - 7th Floor
Fort Worth, TX 76196

Office# 817-884-3436
Mobile# 817-999-5683
Fax# 817-884-1886
Email: dfbennett@tarrantcounty.com

Date: January 4, 2023          Service Number: 2022-18012

RE: Perjury

**To: Conghua Yan,**

On December 16, 2022, you were listed as the reporting person a victim in TCSO case #2022-18012.  After my investigating, I was not able to meet the requirements set forth by TCDA's office.  I spoke to TCDA's office regarding your issue and they advised they would only accept or open an investigation into your claim of perjury only at the request of the presiding judge, since that did not occur, your case has been closed.

Thank you for your cooperation,

Detective D Bennett
817-884-3436

# EXHIBIT 5

## What is the sequence of events in the criminal justice system?



Source: Adapted from The challenge of crime in a free society,
President's Commission on Law Enforcement and Administration
of Justice, 1967. This revision, a result of the Symposium on
the 30th Anniversary of the President's Commission, was prepared
by the Bureau of Justice Statistics in 1997.

Note: This chart gives a simplified view of caseflow
through the criminal justice system. Procedures vary
among jurisdictions. The weights of the lines are not
intended to show actual size of caseloads.